sets aforesaid, and return the same to this court, subject to the exceptions of either party, &c. &c.

The auditor reported the sum of 288*l*. 15*s*. 0*d*. including interest to the 27th May 1794; also assets in hand amounting to 876*l*. 14*s*. 0$\frac{1}{2}$*d*. current money.

FINAL DECREE, October 1794, for 288*l*. 15*s*. 0*d*. current money, with interest from the 27th of May 1794, till paid.

The complainant appealed to the court of appeals.
*Key* and *Mason*, for appellant.
*Smith*, for appellees.

THE COURT OF APPEALS, [RUMSEY Ch. J. MACKALL and JONES, Judges,] *affirmed* the decree of the court of chancery; *(a)* and it was ordered, &c. that the auditor of the court of chancery should restate the said account, and allow the appellant interest on the sum of 250*l*. the legacies due, from the 1st of May 1771, unto the 27th of October 1791, and that the chancellor, on such statement of the auditor, decree the said further sum of interest to be paid by the appellees to the appellant. with interest from the 27th of May 1794, until paid, and the costs of the appeal, &c.

## COURT OF APPEALS, JUNE TERM, 1797.

### BUCHANAN vs. BORDLEY.

APPEAL from the court of chancery. It appears by the bill which was filed the 30th of July 1793, that *Buchanan*, the appellant in this court, and complainant in the court below, did, on the 12th of September, 1763. as the security for one *Benedict Swope*, become bound in a bond to *Stephen Bordley*, whose executor the appellee was, in 360*l*. sterling, conditioned for the payment of 152*l*. 16*s*. 1*d*. sterling, on the 1st of Novem-

*(a)* This decree is said to be in conformity with the precedent in the case in this court of *Griffith and Pennington* in 1795: But *Key*, the attorney for the appellant in this case, suggested, that it did not seem to be correct; for it appeared impracticable to *affirm the decree of the chancellor*, and then give interest, or direct it to be stated from one year after the date of the will; because the chancellor had *assumed a sum different* from the amount of the legacies. The legacies make 250*l*. whereas the chancellor had stated the principal to be 288*l*. 15*s*. 0*d*. which is composed of the whole principal and some interest. This occasions embarrassment in *affirming* the decree. The simple business appeared to him to be, to *reverse the decree*, and direct the chancellor to have the account restated, decree the principal of 250*l*. being the amount of the legacies, and interest from 18th of November 1770, till paid. and costs. &c. The decree of affirmance was changed to what it now appears.

ber then next. The bill charges, that the defendant's testator, and himself as executor, indulged the principal, who has become insolvent, and that a judgment had been obtained at May term, 1793, against the complainant. That there is a credit endorsed on the bond on the 14th March, 1767, which is not allowed; and at the same time bonds were placed in the defendant's hands in part satisfaction of the bond entered into by *Swope* and the complainant. That the complainant was never applied to for payment until May, 1778, when he expressed his disapprobation of the indulgence which had been given to *Swope*, and requested that the most speedy and compulsory measures should be adopted to compel payment of the balance. That the defendant promised that he would not indulge the said *Swope* longer, but would use such steps as to compel immediate payment. That the complainant had no further information whatsoever relative to the said bond, or any application for payment, until the year 1790, or thereabouts, before which time the said *Swope* had removed out of the state into the state of Kentucky. That no steps were taken to compel payment of *Swope*, although he had resided in this state several years after 1778, and was well able to pay the debt. That he heard nothing of the bonds delivered to the defendant in part satisfaction of the debt, until about three years ago, when they were barred by the act of limitations, at which time the defendant notified that he had received no part of them. Prays to be discharged from the judgment, or otherwise relieved in the premises, &c. and an injunction, &c.

ANSWER—acknowledges the receipt of the sum stated to be paid in March, 1767; admits the bonds were lodged for collection, but they were never received as a payment, nor did he conceive himself authorised to bring suits on the bonds, or any of them, nor was ever he requested so to do; that they were to be delivered when called for by the complainant; that they were never assigned to the defendant; that they were left with the defendant as a matter of convenience to the complainant and the obligors, as the latter resided at a considerable distance from the former; that no part has been received. Denies the complainant ever expressed any dissatisfaction at the indulgence given to *Swope*, or ever requested any measures might be taken against *Swope*.

The case was submitted on bill and answer.

HANSON, Chancellor. The indulgence granted to a principal, which is to discharge a surety from his engagement, must be of that kind whereby the nature of the contract is changed, or whereby the creditor, without the consent of the surety, and by his own act, puts

it out of his own power to enforce the payment of the debt by the principal. It does not mean a mere forbearance to sue the principal, which a court of equity, on application of the surety, might direct him to do, on pain of foregoing his claim against the surety.

As little applicable to this case are the cases respecting old state debts.

The complainant, as it appears from the answer, which is admitted, had no reason to believe that the debt had ever been discharged. With respect to the bonds delivered to the defendant, it appears from the answer that the defendant had no authority to sue, and that he never undertook to call upon the obligors, or did any act whatever from which the complainant might suppose he had considered himself bound to discount the amount of the said bonds.

It is a consideration of some importance in this cause, that by the laws of Maryland the complainant might have made himself the creditor of the principal, and might then have instituted a suit in his own name. In short, it appears to the chancellor, that all this court can with propriety do for the complainant is to exempt him from paying the defendant's costs, in consideration of his having had a probable ground for application for relief.

It is thereupon, this 14th day of February 1795, adjudged, &c. that the injunction heretofore issued in this cause be dissolved, provided that the defendant be not allowed to levy more against the complainant, by his execution at law, than will remain due on the judgment, after deducting the payment of 45*l.* 16*s.* 10*d.* sterling, paid on the 14th March 1767, &c.

The complainant appealed to the court of appeals.

*Winchester*, for the appellant.

*Cooke* and *Key*, for the appellee.

The Court of Appeals, at this term, (June 1797) affirmed the decree of the court of chancery.

## COURT OF APPEALS, JUNE TERM, 1797.

### Somerville *et al.* vs. Trueman's Devisees.

Appeal from a decree of the court of chancery dismissing the bill of complaint.

The bill was filed on the 23d of September, 1785, in the names of *James Somerville* and *Ann* his wife, against *Benjamin Trueman,* and stated, that *Edward Trueman,* being seised of parts of two tracts of land called "*Black-*